[Cite as *Johnson v. Toledo, Div. of Sts., Bridges & Harbor*, 2022-Ohio-4418.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Ben Johnson, Jr.                                Court of Appeals No.  L-22-1002

    Appellant                          Trial Court No.  CI0201704821

v.

City of Toledo Ohio Division
of Streets, Bridges, and Harbor            **DECISION AND JUDGMENT**

    Appellee                          Decided:  December 9, 2022

* * * * *

Thomas P. Kurt, for appellant.

Dale R. Emch, Director of Law, Jeffrey B. Charles, Chief of
Litigation, Thomas E. Puffenberger, Senior Attorney, and
Michael J. Niedzielski, Chief of Labor and Employment, for appellee.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal from a December 9, 2021 judgment of the Lucas County

Court of Common Pleas, granting appellee's Civ.R. 50(A) motion for a directed verdict,

thereby dismissing appellant's, Ben Johnson, R.C. 4112.02 employment discrimination

claims.

{¶ 2} On December 9, 2021, after appellant rested his case, pursuant to Civ.R. 50(A), appellee motioned the trial court for a directed verdict. The trial court granted the motion, upon determining that reasonable minds could only conclude, based upon the evidence submitted, adversely to appellant's claims. For the reasons set forth below, this court affirms the judgment of the trial court.

{¶ 3} Appellant sets forth the following sole assignment of error:

The trial court erred in ordering a directed verdict in favor of defendant-appellee.

{¶ 4} The following undisputed facts are relevant to this appeal. Appellant was employed as a maintenance worker with the city of Toledo, Division of Streets, Bridges and Harbor, from November 3, 2003, until May 4, 2018, after which appellant voluntarily resigned and announced his retirement.

{¶ 5} Appellant's letter of resignation stated, in relevant part, "*I am no longer interested in maintaining my employment with the City of Toledo. Please accept my letter of resignation from my position as maintenance worker * * * I am planning to activate my retirement benefits following this resignation * * * I wish the company and all its employees much success.*" (Emphasis added).

{¶ 6} On November 15, 2017, prior to resigning and retiring, appellant filed suit against appellee, alleging that he had been subjected to R.C. 4112.02 employment discrimination by appellee on the basis of disability and race. The origins of appellant's

2.

suit are rooted in his unsupported claim of suffering from a potentially fatal bee sting allergy. The record of evidence contains no evidence demonstrative of these claims.

{¶ 7} Illustrative of the absence of supporting evidence, the record is devoid of evidence that appellant was medically diagnosed with a bee sting allergy, that appellant suffers from a bee sting allergy, regardless of the lack of a diagnosis, that appellant was classified as disabled on the basis of a bee sting allergy, or on any basis, that appellant was stung by a bee in the course of employment with appellee, that appellant incurred medical injuries and/or damages arising from a bee sting sustained in the course of employment with appellee, or that appellee violated R.C. 4112.02 in its treatment of appellant.

{¶ 8} In addition to the fundamental absence of evidence, appellant acknowledged at trial that he had untruthfully averred in his affidavit, as allegedly demonstrative of his claimed bee sting allergy, that he had been, "stung by bees and had to rush to the emergency room for medication." The record shows, and appellant concedes, that this claim was false.

{¶ 9} Appellant's principal remaining evidence consisted of urgent care records generated from appellant's visit to an urgent care facility on September 22, 2016, two days after appellant apparently experienced an insect sting in his off-duty, personal hours, unrelated to his employment with appellee. Contrary to appellant's bee sting allergy claims, the urgent care records reflect that appellant exhibited no symptoms suggestive of

3.

an allergic reaction to the sting, such as respiratory distress, nausea, tingling, weakness, or numbness. The records show that appellant himself described his symptoms to the urgent care staff as "moderate", likewise incongruous with his claims of suffering from a fatal bee sting allergy, and in stark contrast to his claim that a bee sting allergy required that he, "[H]ad to choose between risking his life or losing his job."

{¶ 10} The records state that appellant was examined and found to be, "*[A]lert * * * comfortable * * * oriented * * ** No motor deficit. No sensory deficit. Pupils are reactive. No pharyngeal edema * * * No evidence of soft tissue swelling. Lungs are clear without wheezing. Regular cardiac rate and rhythm. Skin clear without urticarial/rash*." (Emphasis added).

{¶ 11} The urgent care records contain no evidence of an allergic reaction or any other form of medical distress.

{¶ 12} Consistently, the records show that appellant was not administrated or prescribed any medication, other than a skin cream, required no medical treatment, and was sent home. The record reflects that despite appellant's lack of evidence of a bee sting allergy, appellee nevertheless accommodated appellant's workplace request related to bees. It granted appellant's request that he not be given alleyway work assignments. This was done in response to appellant's written submission of concerns regarding the potential presence of bees in alleyways. No other work locations of bee concern were cited by appellant in the accommodation request to appellee.

4.

{¶ 13} The trial transcripts are illustrative of the above-discussed dearth of evidence.

{¶ 14} Upon appellant's cross-examination, appellee inquired, "[H]ave you ever been stung by a bee at work?"

{¶ 15} Appellant replied, "*No,* but there was a co-worker of mine that got stung by a bee * * * *[T]hat's never happened to me*."  (Emphasis added).

{¶ 16} Appellee further inquired, "Is there any medical documentation from a time you've been stung by a bee and had breathing issues?"

{¶ 17} Appellant replied, "*No documentation*."  (Emphasis added).

{¶ 18} The record further reflects that the specific basis cited by appellant regarding his heightened fear of bees in alleyways was that he was required to perform grass cutting in the alleyways, and he associated that task with a heightened risk of bees and potential bee stings.

{¶ 19} Inconsistently, appellant acknowledged that he routinely performed grass cutting duties in his off-duty hours, both at his home and at his multiple rental properties.

{¶ 20} Given this contradiction, appellee inquired upon cross-examination, "So your testimony is that you are fearful of your life when you're cutting grass in the alleys [while on the job], but it's not an issue when you are cutting grass at your rental properties [while off-duty]?"

5.

**{¶ 21}** Appellant revealingly replied, "I don't like cutting grass. I don't want to cut grass."

**{¶ 22}** In addition to the bee issue, the record also reflects appellant's disappointment regarding his unsuccessful attempt at securing a promotion to a bridge operator position. However, the record shows that appellant does not possess a high school diploma or a GED, the possession of one of which is a prerequisite for eligibility for the bridge operator position.

**{¶ 23}** Relatedly, the record shows that appellant declined appellee's offers of assistance in obtaining the necessary credentials in connection to his interest in the bridge operator position, and other promotional opportunities. For example, appellant was offered an alternate bridge operator position, conditioned upon appellant attempting to obtain a GED. Appellant was simultaneously offered several months in which to begin the process of obtaining a GED, so as to be able to commence the position. Appellant declined.

**{¶ 24}** Upon cross-examination, appellee inquired, "Would you agree that we gave you several months to work on getting your GED?"

**{¶ 25}** Appellant replied, "I'd agree * * * [But] I didn't have time."

**{¶ 26}** Similarly, so as to render appellant eligible for other promotional opportunities, appellee offered assistance to appellant in obtaining a CDL. Appellee offered to cover appellant's CDL costs. Appellant again declined.

6.

{¶ 27} Upon cross-examination, appellee inquired, "That would have solved a lot of your problems, correct? If you had a CDL you could bid into several different jobs, correct?"

{¶ 28} Appellant replied, "Yeah."

{¶ 29} Appellee further inquired, "The City was offering to pay for the CDL, correct?"

{¶ 30} Appellant conceded, "Yep * * * I just didn't want to get a CDL."

{¶ 31} The record reflects that appellee went to considerable lengths to assist appellant in advancing to a more satisfying position. In conjunction, the record shows those offers were declined by appellant.

{¶ 32} Lastly, we reiterate that appellant's chief evidentiary averment in his supporting affidavit was false. Upon cross-examination, as regards his affidavit, appellant admitted, "*I signed it, but it's not true. I never had to be rushed to the emergency [room] * * * I never had to be rushed to the hospital.*" (Emphasis added).

{¶ 33} On December 9, 2021, after appellant rested his case, pursuant to Civ.R. 50(A), counsel for appellee motioned the trial court for a directed verdict. The trial court held, "Witnesses were called and testimony was offered * * * Upon review of defendant's motion for directed verdict and for good cause shown, the directed verdict motion is hereby granted. All claims are dismissed." This appeal ensued.

7.

**{¶ 34}** In the sole assignment of error, appellant alleges that the trial court erred in granting appellee's Civ.R. 50(A) directed verdict motion. We do not concur.

**{¶ 35}** It is well-established that the governing standard of appellate review applicable to appeals of disputed directed verdict determinations is de novo. As held by this court in *Dana Ltd. V. TACS Automation, LLC*, 6th Dist. Lucas L-19-1203, 2021-Ohio-2555, ¶ 48-49,

> It is well-established that the standard of appellate review applied to disputed directed verdict decisions is de novo. *Grau v. Kleinschmidt*, 31 Ohio St.3d 84, 509 N.E.2d 399 (1997). This court construes the evidence presented most strongly in favor of the nonmoving party and, thereby, determines whether reasonable minds could only find favorably to the nonmoving party. This court assumes the truth of the evidence supporting the nonmoving party, and gives that party the benefit of all reasonable inferences. *Fifth Third Bank v. Gen. Bag Corp*., 8th Dist. Cuyahoga No. 92793, 2010-Ohio-2086, ¶ 30.

**{¶ 36}** R.C. 4112.02(A) establishes that, "It shall be an unlawful discriminatory practice for any employer, because of the race, color, religion, sex, military status, national origin, disability, age, or ancestry of any person * * * to refuse to hire, or otherwise discriminate against that person with respect to * * * employment."

8.

{¶ 37} As applied to the instant case, our considerations are guided by the record's absence of evidence in support of the notion that appellant suffered from a bee sting allergy, potentially fatal or otherwise, experienced a bee sting and/or related damages while on the job, or was subjected to unlawful treatment by appellee, in any way in breach of R.C. 4112.02.

{¶ 38} Rather, in support of this appeal, appellant unilaterally asserts that he had, "[D]eveloped a potentially life-threatening medical condition -- an allergy to bee stings[,] which could result in death by asphyxiation." Again, the record is devoid of evidence in support of the claim.

{¶ 39} Nevertheless, appellee accommodated appellant's bee-related request, and discontinued alleyway work assignments for appellant.

{¶ 40} On December 8, 2015, appellee notified appellant, "Your accommodation request for an allergy to bee stings as a maintenance worker, from working in alleys has been approved * * * [Y]ou will not be assigned to work in the alleys."

{¶ 41} Appellant concedes on appeal, "[Appellee] recognized [appellant's] [alleged] disability, and agreed to provide an accommodation so that he could continue to work." Despite the accommodation of the unproven claim, appellant alleges that he, "[H]ad to choose between risking his life for losing his job. [Appellant] chose not to put his life in danger any longer, and on April 23, 2018, [appellant resigned]."

9.

**{¶ 42}** This sweeping claim of appellant's life being placed in jeopardy in the workplace, as connected to bees, or in any way, is belied by the record of evidence. In addition, appellant summarily claims that he, "[P]resented substantive probative evidence that he suffered a life-threatening allergy to bee stings." The record does not bear out this assertion.

**{¶ 43}** The primary evidence offered in support of claims of suffering a fatal allergy to bee stings, not already shown to be untrue by appellant's own admission, is that on one off-duty occasion, unrelated to his employment with appellee, appellant went to an urgent care facility, several days after apparently experiencing an insect bite.

**{¶ 44}** On September 22, 2016, appellant was examined at an urgent care facility. The medical records document that appellant was, "[A]lert * * * oriented * * * Lungs are clear without wheezing. No acute respiratory distress. Normal, non labored respirations. The breath sounds are normal, with good equal air movement." Consistently, appellant's own urgent care records state that appellant has, "No known allergies." No medical treatment was performed. No medications were prescribed. Appellant was sent home.

**{¶ 45}** In conjunction with the bee-related claims, appellant also sets forth conclusory, unsupported allegations that he was discriminated against on the basis of race. Appellant claims that because the high school diploma/GED job eligibility requirement for the bridge operator position was not waived for him, appellee engaged in R.C. 4112.02 racial discrimination. The record does not demonstrate such a claim.

10.

{¶ 46} The record is devoid of evidence that the high school diploma/GED requirement was waived for the person placed in that position, and that it was done so in a way suggestive of racial discrimination.

{¶ 47} Specifically, appellant argued on appeal, "[T]he [bridge operator] job now required a high school diploma or GED. [Appellant] * * * had neither * * * Robin Wilson testified that she sought to assist [appellant] in obtaining a waiver of the high/school/GED requirement, but it was denied by the city. Ms. Wilson testified that the city had waived the requirement in other circumstances."

{¶ 48} Appellant's suggestion that he officially requested a high school/GED waiver, that the waiver was officially denied, and that there was a denial on a racially unlawful manner, is not born out by the record of evidence.

{¶ 49} While the record shows that the issue of waiver arose informally, the evidence reflects that appellant shifted his attention to another maintenance position, not requiring a GED, prior to any formal determination on the potential waiver. The record contains no evidence of the same type of waiver being requested, and granted, to another employee of a different race, for the bridge operator position or similar position, so as to be arguably suggestive of racial discrimination in this case.

{¶ 50} With respect to Wilson's testimony, upon which appellant relies to suggest racial discrimination, Wilson, stated, "We looked at whether [the bridge operator position] could happen, but management was like, oh, he doesn't have a high school

11.

diploma, but then we were like, well, what about the waiver * * * But when that didn't happen right away, we were back to looking at this maintenance position, whether he would go into [bid on] the slot for that."

{¶ 51} The record shows that rather than pursue a GED with the assistance offered by appellee, and rather than continue to pursue a waiver, appellant shifted his pursuit, with the assistance of Wilson, to bidding on another maintenance department position which did not have the GED requirement. Upon cross-examination, Wilson conceded that she had no documentary evidence of, or direct knowledge of, information demonstrating that other waivers had been granted in such a way suggestive of potential racial discrimination in this case.

{¶ 52} Appellee inquired of Wilson, "Does [appellant] have a GED or high school diploma?" Wilson replied, "To my knowledge, he does not."

{¶ 53} Appellee next inquired, "Are you aware that this position requires a high school diploma or GED?" Wilson replied, "I'm aware of that."

{¶ 54} In further exploring the waiver issue, appellee inquired of Wilson, "Isn't it true that the City of Toledo is not allowed to waive an education requirement with approval from the Civil Service Commission?" When Wilson claimed that she believed that they could do so, and had done so, appellee inquired, "Can you give an example of when that's occurred?" Wilson acknowledged that she could not, and replied, "*I don't have the time, date, but it was shared with me.*" (Emphasis added).

12.

{¶ 55} The record contains no evidence that the person who filled the bridge operator slot desired by appellant was granted a waiver of any type, GED or otherwise, so as to suggest racial discrimination in this case. The record contains no evidence that any other employee was granted a waiver of the type informally discussed for appellant, and was granted the waiver so as to secure a new position, of any kind, in a way demonstrative of racial discrimination against appellant in this case.

{¶ 56} Civ.R. 50(A)(4) establishes,

When a motion for directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and directed verdict for the moving party.

{¶ 57} We have carefully scrutinized and considered the record of evidence, paying particular attention to any evidence potentially in support of the notion that appellant suffers from an allergy to bee stings, suffered any bee stings and/or bee sting damages in the workplace, and, relatedly, any evidence that appellant experienced any form of R.C. 4112.02 maltreatment by appellee.

{¶ 58} As discussed in detail above, scrutiny of the record confirms the wholesale absence of such evidence.

13.

{¶ 59} Upon our de novo review, we find that the record contains no evidence reflecting that appellant suffers from an allergy to bee stings, or was in any injured or discriminated against by appellee in relation to bees. Likewise, the record offers no evidence that can be construed as reflecting that appellee otherwise violated R.C. 4112.02 in its treatment of appellant. We find, based upon the evidence submitted, that reasonable minds can only conclude adversely to appellant's claims.

{¶ 60} Accordingly, we find that the trial court's disputed granting of appellee's App.R. 50(A) motion for directed verdict was not improper.

{¶ 61} On consideration whereof, the judgment of the Lucas County Court of Common Pleas is hereby affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.

Christine E. Mayle, J.

Gene A. Zmuda, J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.